Filed 10/15/14  P. v. White CA2/6

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOHN HENRY WHITE,<br><br>    Defendant and Appellant. | 2d Crim. No. B249286<br>(Super. Ct. No. 2012019102)<br>(Ventura County) |

An amended information charged appellant John Henry White with one count of committing a lewd or lascivious act upon a child (Pen. Code, § 288, subd. (a))[1] and two counts of luring (§ 288.3, subd. (a)).[2]  It was alleged that appellant had suffered three prior convictions resulting in prison terms (§ 667.5, subd. (b)).[3]  Following a jury

---

[1] All statutory references are to the Penal Code unless otherwise stated.

[2] Although the Penal Code does not use the term "luring," courts commonly employ it to describe the offense set forth in section 288.3, involving contact or communication with a minor with the intent to commit one of several enumerated target offenses, most sexual in nature.  (See *People v. Cornett* (2012) 53 Cal.4th 1261, 1267; *People v. Keister* (2011) 198 Cal.App.4th 442, 445, fn. 1.)

[3] In addition, it was alleged that appellant had suffered a prior strike conviction in Pennsylvania (§§ 667, subds. (c), (e)(1), 668, 1170.12, subds. (a), (c)(1)) and, on the count for lewd act upon a child, that appellant's Pennsylvania conviction was a serious felony requiring a five-year sentence enhancement.  (§ 667, subd. (a)(1).)  The trial court dismissed the allegations arising from the Pennsylvania conviction.

trial, appellant was convicted of all three counts. He admitted the prior conviction allegations.

Appellant was sentenced to state prison for an aggregate term of 13 years. On count one for lewd act upon a child, the court imposed the high-term sentence of eight years as the principal term. On each of the remaining two counts for luring, the court imposed consecutive subordinate terms of one year.[4] Appellant received an additional three years for the prior conviction enhancements. The court imposed an $840 restitution fine (§ 1202.4, subd. (b)), a suspended $840 parole revocation restitution fine (§ 1202.45), and a $5,200 sex offense fine (§ 290.3). Appellant was awarded 385 days of presentence custody credit.

Appellant contends that the trial court erred in various evidentiary rulings, insufficient evidence supports his convictions on the luring counts, the prosecution's failure to elect target offenses for the luring counts denied him fair notice of the charges, there was cumulative error, the sentence on count two should be stayed under section 654, and the judgment should be modified to correct the amount of custody credit. We will vacate in part the convictions for luring, modify the sentence as to those counts, and correct the award of custody credits. In all other respects, we affirm.

FACTS

*Prosecution Evidence*

*Charged Conduct*

On May 24, 2012, two eighth grade girls, H.G. and I.O., were doing homework after school in the children's section of the E.P. Foster Library in Ventura. At the time, H.G. was 14 years old and I.O. was 13 years old. Appellant, a 44-year-old man whom the girls did not know, walked up to them, touched or shook their hands, and said hello. The girls started laughing nervously because they were caught off guard.

---

[4] For the target offense, the trial court selected use of a minor to pose for commercial sexual images (§ 311.4, subd. (b)). The jury explicitly found that appellant intended to violate both sections 311.4, subdivision (b) and 288 as target offenses.

2

Appellant asked the girls how old they were, and they told him. He told them that they were "sexy" and "beautiful" and that they should make "porno" movies and have their photos taken. "But," he said, "don't tell anyone."

Appellant told the girls that he attended Brooks Institute, a film school in Ojai, and wanted to make a film with them and put it on Facebook or YouTube. He said to H.G., "Let's use your camera," referring to the camera on her cell phone. H.G. lied and said that it was broken. The girls did not tell appellant to leave because they thought he was just joking and would go away.

Indicating a corner of the library, appellant said, "Let's go over there and shoot a movie." At first H.G. said, "No, thanks, we need to get our homework done." Eventually, the girls went with appellant to one of the book aisles near the corner of the room, which H.G. thought was "creepy."

Appellant told I.O., "I'm going to drop a book, and you pick it up." He told H.G. to film I.O. while she picked up the book. H.G. pantomimed filming.

Appellant took a book from the shelf, dropped it on the ground, and I.O. picked it up quickly. Appellant told I.O. to turn around slowly for him so he could see her body. She refused at first, but after he pleaded with her, I.O. turned around quickly. He grabbed I.O.'s hand and kissed it for a few seconds. I.O. felt shocked, uncomfortable, and scared.

At that point, H.G. lied and said that her mom was waiting outside and they needed to go. The two girls gathered their possessions and started to head out of the library. Appellant followed them. He told I.O. to give him her phone number so that they could film more movies. I.O. gave appellant a fake number and said, "we've got to go."

Appellant asked I.O. if he could hug her and she said, "No thanks." He said, "Come on, please." I.O. again said, "No thanks." Appellant nonetheless hugged I.O. with both arms and kissed her neck for a few seconds. I.O. could feel his lips and saliva. The girls left the library. A nearby friend's mother called the police, who arrested appellant.

3

*Uncharged Conduct*

*Samantha E.*

Early on the morning of February 8, 2012, Samantha E., a 19-year-old woman from Ojai, received a call from her friend Anthony around 3:00 a.m. Anthony said that he and Scotty, another of Samantha's friends, were supposed to give appellant a ride. Samantha had not previously met appellant. She agreed to drive the three men around.

Samantha drove them to two houses in Ventura and one in Oxnard. Each time, she stayed in the car with Anthony and Scotty while appellant went into the house for a few minutes. Afterwards, Samantha drove to a gas station. She got out of the car with appellant, went into the station, and walked towards the women's bathroom. Appellant followed her.

Samantha used drugs, typically Ecstasy or Xanax and less frequently cocaine, "every once in a while." She had not taken any drugs or consumed alcohol that night. Appellant told her that he had "something to wake [her] up," which Samantha took to mean either cocaine or methamphetamine. Appellant told Samantha to go into the men's restroom with him, which she did. Samantha went into a stall, used the toilet, and opened the stall door to leave.

Appellant pushed his way into the stall. His penis was out of his pants. He grabbed Samantha so that her back was against the wall and pushed her head down towards his penis. Samantha resisted. She said that if he did not stop, she would hit him. She punched appellant in the face three times, and he hit her back in the face with the side of his fist. Samantha did not make any physical contact with appellant's penis.

Appellant forcibly kissed Samantha and stuck his tongue into her mouth. Samantha bit off an eraser-sized chunk of skin from appellant's tongue and spit it out, which caused him to turn away. She did not notice any blood. Samantha ran outside. That evening, she and a friend went to the police station and reported appellant's conduct.

4

*K.R. and B.J.*

About a year or two before the incident at the library, K.R., a 14-year-old girl, was staying overnight at the house of a family friend in Ojai. K.R. went to sleep in the guest bedroom, the family friend was sleeping in her own bedroom, and the friend's 16-year-old son, B.J., was sleeping in his own bedroom.

K.R. awoke around 1:30 a.m. when she heard someone outside the house trying to open the doors to her room. Appellant entered. He identified himself as a friend of B.J.'s and told K.R. not to wake up B.J.'s mom. He asked K.R. to get B.J. K.R. walked down the hall to B.J.'s room, woke him up, and told him that someone wanted to see him. B.J. went to the guest bedroom. K.R. went to the living room and watched television.

B.J. had spoken with appellant only once before that night. On that occasion, B.J. was in the laundry room on the outside porch when appellant, who lived with the landlord in another house on the property, walked up to him and started a conversation about sports. B.J. told appellant that he was involved with wrestling in high school. As far as B.J. knew, appellant had never entered the house where he and his mother lived before the night that K.R. stayed there.

When B.J. went to the guest bedroom, appellant seemed very "hyper" and talkative, as if he was under the influence of methamphetamine. Appellant asked B.J. if K.R. was his sister or girlfriend. B.J. said no. Appellant then offered to pay $100 for B.J. to let him have sex with K.R. Appellant showed B.J. a $100 bill. B.J. told appellant that K.R. was 14 years old and "it wasn't [his (B.J.'s)] decision to make."

The conversation turned to wrestling, and appellant asked B.J. to show him a wrestling move. When B.J. started to demonstrate the move, appellant threw him against the wall, pulled down his basketball shorts and underwear, and squeezed his butt cheek. Appellant's fingers were between B.J.'s butt cheeks. B.J. pushed appellant off, pulled up his shorts and underwear, and punched appellant in the face. When appellant asked B.J. why he had done that, B.J. said he was uncomfortable having appellant's hand on his buttock.

5

Appellant offered to pay B.J. $100 if he did not say anything to anyone about the incident. When B.J. reached for the $100, appellant took it back and said that he would only give B.J. the money if B.J. allowed him to have sex with K.R. B.J. again refused the offer.

B.J. told appellant that he was going to go check on K.R. and left the room. He talked to K.R. for a while and then checked the guest bedroom. It appeared that appellant had left, so B.J. went back to his room and fell asleep.

### *Defense Evidence*

Joe Kenton employed appellant at his tree trimming business in Ojai and let appellant live with him for two to three years. His six-year-old son and 21-year-old stepson live with him. To his knowledge, appellant never behaved in a sexually inappropriate manner around his children. Kenton knew that appellant would drink alcohol once in a while but was unaware of any drug use by appellant. Kenton did not believe that appellant had a drinking problem.

Michele Henderson met appellant in February or March 2011 while volunteering at Catholic Charities. The two began a romantic relationship about a month later. At the time, appellant was still living with Kenton. In March or April 2012, appellant moved in with Henderson, her parents, and her two youngest daughters—ages 10 and 13 as of April 2013—at their home in Santa Paula.

Appellant and Henderson had a normal sexual relationship. Nothing about it made Henderson think that appellant had a sexual interest in children.

At trial Henderson was informed of the allegations involving K.R. and B.J. and Samantha E. She testified that she did not believe appellant would have committed those acts. Nothing about appellant's interactions with Henderson's daughters caused her to be concerned or think that he had a sexual interest in them. Henderson's two youngest daughters testified that appellant never made them feel uncomfortable, never touched them inappropriately, and never said anything to them that made them think he had a sexual interest in them.

6

Officer Ohad Katzman investigated the incident involving Samantha E. On March 30, 2012, he examined appellant's tongue. He found no evidence of trauma or scarring where Samantha E. claimed to have bit off the tip nearly two months earlier.

## DISCUSSION

### *Evidentiary Rulings*

Appellant contends that the trial court erred by admitting evidence regarding his alleged attempted forcible oral copulation of Samantha E. and the incident involving K.R. and B.J. He argues that this evidence was inadmissible character evidence to prove his propensity for luring, since it is not a sexual offense, and that it was unduly prejudicial. Appellant also contends that the trial court erred by precluding him from introducing I.O.'s tweets to impeach her testimony.

The trial court allowed in evidence of the incidents involving Samantha E., K.R. and B.J., pursuant to sections 1101 and 1108 of the Evidence Code.[5] The court found that the "strong probative value" of this evidence was not substantially outweighed by the risk of undue prejudice to appellant.[6]

A trial court's rulings on the admissibility of evidence are reviewed for abuse of discretion. (*People v. Goldsmith* (2014) 59 Cal.4th 258, 266.) We will not disturb the trial court's evidentiary rulings unless it "exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10.) The admission of evidence under section 1108, like any ruling under section 352 of the Evidence Code, is subject to review for abuse of discretion. (*People v. Story* (2009) 45 Cal.4th 1282, 1295.)

### *Admission of Evidence Regarding Uncharged Sexual Misconduct*

In general, evidence showing a criminal defendant's disposition or propensity to commit the charged offense is inadmissible. (*People v. Villatoro* (2012) 54 Cal.4th 1152, 1159.) The rules of evidence thus proscribe "evidence of a person's

---

[5] All references to sections 1101 and 1108 are to the Evidence Code.

[6] The trial court excluded evidence of appellant's sexual misconduct in three earlier incidents that the prosecution sought to introduce.

7

character . . . when offered to prove his or her conduct on a specified occasion." (§ 1101, subd. (a).) This proscription applies, in particular, to evidence of specific instances of the defendant's uncharged misconduct. (*Ibid.*; *People v. Edwards* (2013) 57 Cal.4th 658, 711.) Ordinarily, such evidence is admissible, if at all, only to establish some material fact, such as intent, common plan, or identity. (§ 1101, subd. (b); *Villatoro*, at p. 1159.)

Section 1108 provides a "narrow exception" to the general rule. (*People v. Cottone* (2013) 57 Cal.4th 269, 285.) In sex offense cases, the trier of fact may consider evidence that the defendant committed other sex offenses in evaluating a credibility contest between the victim and the defendant. (*People v. Falsetta* (1999) 21 Cal.4th 903, 911, 922.) Such evidence may be admitted to show the defendant's propensity to commit the charged sexual offense or for any other relevant purpose if its probative value outweighs its prejudicial impact on the defendant. (Evid. Code, §§ 352, 1108, subd. (a); *People v. Loy* (2011) 52 Cal.4th 46, 63.) Before admitting evidence under section 1108, "trial judges must consider such factors as its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense." (*People v. Falsetta*, *supra*, 21 Cal.4th at p. 917.)

*Incident Involving Samantha E.*

Appellant contends that the unadjudicated incident involving Samantha E. was wholly dissimilar to the incident at the library and thus lacked any probative value. He further argues that testimony about this incident was highly inflammatory and its prejudicial effect far outweighed its probative value. We disagree.

Even a previous sex crime's *total* lack of similarity to the current case, "although relevant to the trial court's exercise of discretion, is not dispositive." (*People v.*

8

*Loy*, *supra*, 52 Cal.4th at p. 63.) "'[E]vidence of uncharged sexual offenses is so uniquely probative in sex crimes prosecutions it is presumed admissible . . . .' [Citation.]" (*Ibid.*)

Although the incident involving Samantha E. "may not have been sufficiently similar [to the incident at the library] to be admissible under Evidence Code section 1101, [it was] not entirely dissimilar." (*People v. Loy*, *supra*, 52 Cal.4th at p. 63.) As the trial court found, both incidents involved female victims "in the same young-looking age range." Samantha E. was 19 at the time of the incident in the bathroom, and appellant told the police he thought H.G. and I.O. were 20 years old. The trial court thought that Samantha E. looked young for her age. In addition, appellant followed a pattern in both incidents where he "ingratiates himself, finds an opportunity to isolate these [young women] and then takes sexual advantage of it." The record supports the trial court's finding that the Samantha E. incident had probative value.

Appellant's reliance on *People v. Jandres* (2014) 226 Cal.App.4th 340 and *People v. Harris* (1998) 60 Cal.App.4th 727 is misplaced. The similarity between the uncharged and charged conduct here was far greater than in *Jandres*. Samantha E., H.G., and I.O. appeared similar in age, whereas in *Jandres* the court thought it important that a sexual offender is unlikely to mistake an 18-year-old woman for an 11-year-old girl. The second factor distinguishing this case from *Jandres* is the degree of certainty that the defendant committed the uncharged offense. Unlike the facts in *Jandres*, there was no doubt here that appellant's actions towards Samantha E. were motivated by his sexual interest in her. To be sure, there were credibility issues with Samantha E.'s testimony, but nothing so dire as to call its probative value into doubt. While Samantha E. admitted to occasional drug use, she claimed without contradiction that she had not used drugs on the night in question. Her claim to have bitten off a piece of appellant's tongue was not seriously undermined by the wound's disappearance after nearly two months.

*Harris* is also distinguishable from the circumstances here. Like *Jandres* and unlike this case, the prior offense in *Harris* bore no resemblance to the charged crime. Moreover, while appellant's alleged conduct—punching Samantha E. as he forcibly kissed her and attempted to have her orally copulate him—is certainly

9

inflammatory, it is not "inflammatory *in the extreme*" as was the evidence in *Harris* that the defendant "beat [the victim] unconscious and used a sharp instrument to rip through the muscles from her vagina to her rectum, then stabbed her in the chest with an ice pick, leaving a portion of the pick inside her." (*People v. Harris*, *supra*, at pp. 733, 738.) Finally, a factor "weigh[ing] strongly in favor of exclusion" in *Harris* was the remoteness of the 23-year-old conviction coupled with the defendant's lack of any criminal sexual activity in the interim. (*Id.* at p. 739.) Appellant conceded at trial that remoteness was not an issue regarding the Samantha E. incident.

The trial court here recognized that "[t]he uncharged offense is somewhat stronger and more inflammatory than the charged violations." Despite this factor weighing against admission, the court found that the probative value of the evidence outweighed its prejudicial effect. We cannot say that this finding was arbitrary, capricious, or patently absurd. Accordingly, we will not disturb it.

*Incident Involving K.R. and B.J.*

Appellant also challenges the admissibility of K.R. and B.J.'s testimony on the grounds that the incident was nonsexual in nature and lacked any probative value. The trial court could not properly have admitted uncharged conduct pursuant to section 1108 unless the conduct constituted a statutorily-enumerated sexual offense. (*People v. Jandres*, *supra*, 226 Cal.App.4th at p. 353.)

The prosecutor sought to introduce evidence of the incident with K.R. and B.J. to show appellant's sexual interest in K.R. "and how that proves his intent to the charges in this case." Appellant twice sought B.J.'s permission to have sex with K.R. in exchange for $100, the second time knowing that she was only 14 years old. A fact finder could reasonably conclude that appellant attempted to commit statutory rape (§ 261.5; see also *People v. Herman* (2002) 97 Cal.App.4th 1369, 1390-1391 [offer to pay for sex with minor combined with showing up at the minor's location sufficient to establish attempted lewd act upon a child]), a qualifying sexual offense under section 1108. (§ 1108, subds. (d)(1)(A), (d)(1)(F).)

10

This incident was at least as probative as the incident with Samantha E. K.R. was the same age as H.G. Appellant's attempt to have sex with K.R. evidenced an inappropriate sexual interest in girls of that age. It also showed his attempt to commit a sex crime on a minor by ingratiating himself with the minor's friend, here by engaging B.J. in his interest in wrestling and then seeking his permission to have sex with K.R. In addition, the incident with K.R. and B.J. occurred only two years before the charged incident, further increasing its relevancy.

The trial court considered excluding testimony about appellant pulling down B.J.'s shorts and grabbing his buttock due to its potentially inflammatory nature but found it impractical to do so because "the assault on [B.J.] seems to have been part and parcel with a means of accessing control of [K.R.] for sexual assault purposes." The trial court appropriately assessed the probative value of this incident and weighed it against its prejudicial effect. The court did not abuse its discretion by ruling in favor of admission.

*Admission of Evidence Under Section 1108 to Prove the Luring Allegations*

Appellant argues that section 1108 was an improper basis to admit the past sexual misconduct evidence with respect to the two luring counts, because luring is not a sexual offense enumerated in section 1108 and can involve nonsexual conduct. We disagree.

First, section 1108 applies to "a criminal *action* in which the defendant is accused of a sexual offense." (§ 1108, subd. (a), italics added.) Appellant does not dispute that this is a criminal action in which he was accused of a sexual offense. The fact that he was charged with additional counts that arguably are not "sexual offenses" within the meaning of section 1108 does not change the nature of the action. In a section 1108 case, so long as the prior sexual offense is relevant to prove the defendant committed a charged offense and its probative value outweighs its prejudicial effect, it is admissible for that purpose.

In any event, section 1108 applies to luring charges where the target offenses are, as here, lewd or lascivious acts upon a child (§ 288) or use of a minor to pose for a commercial image, film, or live performance involving sexual conduct

11

(§ 311.4, subd. (b)).  In relevant part, section 1108 defines "sexual offense" as "a crime . . . that involved" either conduct proscribed by various enumerated sections of the Penal Code, including the luring target offenses at issue here but not including luring itself, or "[a]n attempt . . . to engage in [such] conduct."  (§ 1108, subds. (d)(1), (d)(1)(A), (d)(1)(F).)  This formulation is broad enough to encompass the charges here under section 288.3.

Luring is a crime that, as alleged and proven here, "involved" sections 288 and 311.4.  It also involved a specific type of attempt to engage in these target offenses.  Section 288.3 prohibits contact or communication with a minor with knowledge that the person is a minor and with the intent to commit a target offense involving the minor.  It punishes a first time offender with the same prison term prescribed for an attempt to commit the target offense.  (§ 288.3, subd. (a).)  Section 288.3 thus reflects a judgment by the voters that for certain offenses, mostly sexual in nature, contact or communication with the intended minor victim is sufficient to establish "conduct that goes beyond 'mere preparation' and 'show[s] that [defendant] is putting his or her plan into action.'"[7] (*People v. Watkins* (2012) 55 Cal.4th 999, 1021.)  Thus, under section 288.3, contact or communication with the minor coupled with the intent to commit the target offense establishes an attempt to commit the target offense.

It makes no difference that one can theoretically be charged with luring based on target offenses that are not enumerated "sexual offenses" under section 1108.  The use of the past tense in section 1108's definition of "sexual offense"—"a crime . . . that involved" enumerated offenses—indicates that it refers to the defendant's actual conduct as opposed to every possible type of conduct that the crime at issue can entail.  Appellant was charged with luring based on target offenses that all fell within the scope of section 1108.  The trial court properly applied section 1108 to the luring counts.

---

[7] Section 288.3 was enacted by Proposition 83, a 2006 initiative measure known as "The Sexual Predator Punishment and Control Act:  Jessica's Law."  One of the stated purposes of this legislation was to "strengthen[] and improve[]" the state's "[e]xisting laws that punish aggravated sexual assault, habitual sexual offenders, and child molesters."

12

*Preclusion of I.O.'s Tweets*

Appellant asserts that the trial court erred in excluding evidence of overtly sexual statements that I.O. posted on the Internet via her Twitter account (tweets).[8] He claims that this evidence would have impeached I.O.'s credibility because she had testified that she was "shocked, uncomfortable, [and] scared" when appellant kissed her hand while she dropped and picked up the book. Appellant contends that the tweet evidence "was relevant not to show that [I.O.] was sexually promiscuous but that it was she, not appellant, who inserted sexual overtones."

This evidence was not probative of I.O.'s credibility. I.O. never testified that she was sexually naïve. Her regularly engaging in online discourse of a sexual nature was in no way relevant to whether she felt shocked, uncomfortable, and scared when appellant, a strange man who was speaking and acting inappropriately towards her, touched her hand. Even an adult with a high degree of sophistication about sexual matters could have had a similar reaction in such a situation. There was no evidence that I.O. gave the incident a sexual dimension—only evidence that appellant did.

This case is not at all similar to *People v. Franklin* (1994) 25 Cal.App.4th 328, 335, in which "a prior false accusation of sexual molestation" by the alleged victim was held to be "relevant on the issue of the molest victim's credibility." (Fn. omitted.) The tweets are not evidence that I.O. gave false testimony, let alone testimony relating to a critical issue at trial. Her reaction to appellant's advances was not an element of the charged offenses. The trial court did not abuse its discretion in excluding the tweet evidence. Similarly, appellant's right under the federal Constitution to present a complete defense was not curtailed by the exclusion of irrelevant evidence. (*People v. Rubin* (2008) 168 Cal.App.4th 1144, 1148.)

---

[8] Appellant describes the tweets as "[I.O. speaking] freely with grown men online about their penises, sperm, her 'pussy,' sexting and intercourse." Though it is unclear from the record whether the tweets involved communications with either grownups or men, appellant's description of the tweets' subject matter is accurate.

13

*Sufficiency of the Evidence on the Luring Counts*

We agree that there is insufficient evidence to support the luring convictions to the extent they are based on section 311.4, subdivision (b), as the target offense and will vacate the convictions in that respect. We will affirm the luring convictions insofar as they are predicated on section 288 as the target offense and resentence appellant accordingly.

In reviewing claims of insufficient evidence, we examine the entire record in the light most favorable to the judgment to determine whether there is substantial evidence—evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Maciel* (2013) 57 Cal.4th 482, 514-515.) We do not reweigh the evidence or reassess the credibility of witnesses. (*People v. Houston* (2012) 54 Cal.4th 1186, 1215.) We accept the logical inferences that the jury might have drawn from the evidence even if we would have concluded otherwise. (*People v. Streeter* (2012) 54 Cal.4th 205, 241.) If the trier of fact's findings are reasonably justified by the circumstances, the opinion of the reviewing court that a contrary finding might also reasonably be reconciled with the circumstances does not warrant reversing the judgment. (*People v. Jones* (2013) 57 Cal.4th 899, 961.)

Section 311.4, subdivision (b), punishes "[e]very person who, with knowledge that a person is a minor under the age of 18 years . . . , knowingly promotes, employs, uses, persuades, induces, or coerces a minor . . . to engage in . . . either posing or modeling . . . for purposes of preparing any representation of information, data, or image . . . , any film, filmstrip, or a live performance involving, sexual conduct by a minor . . . , for commercial purposes . . . ."[9]

---

[9] Subdivision (b) provides in its entirety as follows: "Every person who, with knowledge that a person is a minor under the age of 18 years, or who, while in possession of any facts on the basis of which he or she should reasonably know that the person is a minor under the age of 18 years, knowingly promotes, employs, uses, persuades, induces, or coerces a minor under the age of 18 years, or any parent or guardian of a minor under the age of 18 years under his or her control who knowingly permits the minor, to engage in or assist others to engage in either posing or modeling alone or with others for

14

Appellant clearly did not violate this statute in the library. There is no evidence that he had a camera. H.G. told appellant that her camera was broken and only pretended to film I.O. Therefore, appellant did not prepare any representation of information, data, or image, any film, or any filmstrip. Even if I.O.'s actions picking up the book and turning around constituted a "live performance," it did not involve "sexual conduct," which is limited in this context to "actual or simulated[] sexual intercourse, oral copulation, anal intercourse, anal oral copulation, masturbation, bestiality, sexual sadism, sexual masochism, penetration of the vagina or rectum by any object in a lewd or lascivious manner, exhibition of the genitals or pubic or rectal area for the purpose of sexual stimulation of the viewer, any lewd or lascivious sexual act as defined in Section 288, or excretory functions performed in a lewd or lascivious manner . . . ." (§ 311.4, subd. (d)(1).)

Nor does the record support a finding that any of appellant's contact or communication with the girls evidenced an intent to violate section 311.4, subdivision (b), at some future time. Appellant told the girls that he found them "beautiful" and that he thought they should appear in "porno" movies, but they thought he was joking. Although appellant asked for I.O.'s phone number as the girls were leaving "so [they] could] film some more movies," there is no evidence that the subject matter would have been any more risqué than the pretend film in the library. When asked what kind of a film appellant said he was going to make, I.O. described the book dropping scene. Neither girl could remember appellant ever saying that he wanted to make a pornographic film with them in it.

purposes of preparing any representation of information, data, or image, including, but not limited to, any film, filmstrip, photograph, negative, slide, photocopy, videotape, video laser disc, computer hardware, computer software, computer floppy disc, data storage media, CD-ROM, or computer-generated equipment or any other computer-generated image that contains or incorporates in any manner, any film, filmstrip, or a live performance involving, sexual conduct by a minor under the age of 18 years alone or with other persons or animals, for commercial purposes, is guilty of a felony and shall be punished by imprisonment in the state prison for three, six, or eight years." (§ 311.4, subd. (b).) Subdivision (c) contains identical language except that it does not require proof of the defendant's commercial purpose and the punishment is for a term of 16 months or two or three years. (See *People v. Cochran* (2002) 28 Cal.4th 396, 401-402.)

15

Most important of all, there is no evidence that appellant had the intent or wherewithal to make a *commercial* film. Appellant told the girls that he attended film school, but I.O. thought he "wasn't making any sense" because "[h]e didn't have a camera to film anything, and he seemed old to be in film school." Although appellant told the girls that he wanted to put the film on Facebook or YouTube, there is a difference between making a movie "for public consumption," as respondent characterizes this evidence, and for commercial purposes, as the statute requires. Any conclusion about appellant's commercial purpose would be speculative based on the evidence in the record. Consequently, there is insufficient evidence that appellant violated section 288.3 based on section 311.4, subdivision (b), as the target offense.

We reject appellant's challenge to the sufficiency of the evidence based on section 288 as the target offense. He does not dispute that there is sufficient evidence that he violated section 288 by kissing I.O. on the neck, for which he was convicted on count one. His communications with I.O. leading up to the kiss suggest that he had the intent to violate section 288. Although a much closer call as to H.G., we think that by violating section 288 when he kissed I.O. and telling the girls that he wanted to "film some more movies," a reasonable jury could conclude that appellant intended to violate section 288 with H.G. as well, particularly given his history of alleged sex crimes against children and young adults who look that age.

We will vacate the luring convictions to the extent they are based on section 311.4, subdivision (b), as a target offense and resentence appellant accordingly. On count two for luring I.O., the sentence is the same—one year—using section 288, subdivision (a), as the target offense. However, pursuant to section 654, the trial court stayed appellant's sentence on count two to the extent section 288 was the target offense. Respondent does not appeal that finding. On count three for luring H.G., the sentence will be reduced from one year to four months using section 288, subdivision (c)(1), as the target offense.

16

## *Fair Notice of the Target Offense*

Appellant argues that the trial court violated his due process right to fair notice of the charges against him by denying his request to force the prosecution to elect a single target offense for each of the luring counts.

There is a paradigmatic difference between the situation here and the one appellant relies on in *People v. Castro* (1901) 133 Cal. 11.[10] In that case, the evidence showed that the defendant had committed multiple distinct acts (a series of statutory rapes over several months), each of which potentially could have served as the basis for conviction of the single charged offense. The prosecution's failure to notify the defendant and the jury of the specific act for which it sought punishment unfairly forced the defendant to defend against all of the acts. (*Id.* at pp. 12-13.) Here, in contrast, appellant's single course of conduct was potentially subject to punishment under multiple legal theories. Appellant argues that the prosecution should have been limited to just one target offense on which to proceed. He is mistaken.

In general, charging a defendant with a substantive offense "places the defense on notice of, and allows trial and conviction on, all degrees and theories of [the offense]." (*People v. Contreras* (2013) 58 Cal.4th 123, 149; see also *People v. Abel* (2012) 53 Cal.4th 891, 938 [rejecting argument that *Apprendi v. New Jersey* (2000) 530 U.S. 466 "create[d] new notice requirements for alternative *theories* of a substantive offense"].) "While section 654 prohibits multiple *punishment*, it is generally permissible to *convict* a defendant of multiple charges arising from a single act or course of conduct." (*People v. Sanders* (2012) 55 Cal.4th 731, 736.) "The prosecution is not required to elect between the different offenses or counts set forth in the accusatory pleading . . . ." (§ 954.)

Here, the prosecution specified the target offenses on which it sought a luring conviction. Appellant was charged in the amended information with two counts of luring, one concerning H.G. and one concerning I.O. In each count, the information

---

**10** We thus find the parties' extensive discussion of *Castro*, *People v. Jones* (1990) 51 Cal.3d 294, and *People v. Salvato* (1991) 234 Cal.App.3d 872 beside the point.

17

listed three target offenses, although the prosecution ultimately opted to proceed on only two of them. The jury was instructed on the elements of each target offense and told that it could not convict appellant of luring without unanimously agreeing on at least one target offense. The verdict forms required the jury to specify the target offenses on which they agreed. Appellant had sufficient notice of the charges against him.

### *Cumulative Error*

Appellant asserts that cumulative error compels the reversal of his convictions. We have identified and ordered correction of one error in the luring convictions. There is thus no error to cumulate. (See *People v. Myles* (2012) 53 Cal.4th 1181, 1225.)

### *Calculation of Custody Credits*

Appellant claims he is entitled to an additional 32 days of presentence custody credit. Respondent correctly concedes the point. Appellant was in custody from the date of his arrest on May 24, 2012, through his sentencing on May 21, 2013. He was thus entitled to 417 days of presentence custody credit, consisting of 363 days of actual credit and 54 days of work credit. (§§ 2900.5, subd. (a), 2933.1.) The trial court, however, awarded only 385 days of credit. We shall accordingly order that the judgment be modified to correct this error.

### DISPOSITION

Appellant's convictions under section 288.3 in counts two and three are vacated to the extent they are based on section 311.4, subdivision (b), as the target offense. On count two, he is resentenced to a consecutive one-year term, calculated using section 288, subdivision (a), as the target offense, and stayed pursuant to section 654. On count three, he is resentenced to a consecutive four-month term calculated using section 288, subdivision (c)(1), as the target offense. The judgment is modified to increase appellant's presentence custody credit from 385 to 417 days. Upon remittitur issuance, the clerk of the superior court is directed to prepare an amended abstract of judgment reflecting these modifications. The clerk shall forward a copy of the amended abstract of

18

judgment to the California Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED.


PERREN, J.


We concur:


GILBERT, P. J.


YEGAN, J.


19

Matthew Guasco, Judge

Superior Court County of Ventura

---

Judith Kahn, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, Connie H. Kan, Deputy Attorney General, for Plaintiff and Respondent.